(88 Misc. Rep. 389)

## In re GRIFFITHS' WILL.

(Surrogate's Court, New York County. December, 1914.)

WILLS (§ 206*)—EXECUTION—VALIDITY—CODICIL—ADMISSION TO PROBATE.

Testator, a layman, after filling with testamentary provisions the space in an ordinary blank will down to the printed clause for appointment of executors, continued on to the third page, leaving the second page blank. A sentence begun on the first page was completed on the third page; the word "over" being written on both pages to show the connection. The printed form on the first page for the appointment of executors was filled in, and the names of testator and the subscribing witnesses were signed to the first page. The writing continued connectedly on the third page to where the signature of testator only, and the date "Feb. 25, 1911," appeared, and then followed a direction, signed by testator only, that no bonds should be required of the executors. At the bottom of the third page appeared "Feb. 27, 1911. Codicil # 1. I bequeath to my * * * son * * * the sum of $50," following which, and at the end of the writing, were the signatures of testator and subscribing witnesses. The evidence showed that the paper was executed on the date stated at the bottom of the page, that all the signatures were affixed at one sitting, and that testator used the word "codicil" to mean "end of the will." *Held*, that the bottom of the third page was the end of the will, and that the entire writing was entitled to be admitted to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 513, 514; Dec. Dig. § 206.*]

Proceedings on contested probate of the last will and testament of William Henry Griffiths, deceased. Probate decreed.

Béla Darwin Eisler, of New York City, for proponents.

Robert M. Boyd, Jr., of New York City, for contestant.

Warren C. Fielding, of New York City, special guardian.

COHALAN, S. The will was drafted by the testator on an ordinary will blank. The space in the blank on the first page was inadequate for the testamentary provisions that the testator desired to make, and, after filling that space down to the printed clause for the appointment of the executors, the testator continued on to the third page, leaving the second page blank. A sentence is begun on the first page and completed on the third page, and the word "over" is written on both pages, to show the connection between the provisions begun on the first page and completed on the third. The printed form on the first page for the appointment of the executors is filled in, and the testator and the witnesses signed their names in the spaces for that purpose on the first page.

The writing continues connectedly down the third page to about the middle thereof, where there appears the signature of the testator *only*, and the date, "Feb. 25, 1911." Then there follows a paragraph on the third page directing that no bond shall be required of the executors named on the first page. This paragraph is signed by the testator, but, like the paragraph immediately above, is not subscribed by the two witnesses. At the bottom of the third page is a clause which appears on the paper as follows:

"Feby. 27th, 1911.

"Codicil # 1. I bequeath to my first born son Henry Wilson Griffiths the sum of fifty dollars $50.00 in cash."

---

Directly below this are the signatures of the testator and the two attesting witnesses. These subscriptions are at the actual end of the writing on the paper propounded for probate. From the testimony it appears without contradiction that, although two different dates appear on the paper, the date at the bottom of the third page, February 27, 1911, is the actual date of execution, and that all the signatures were affixed "at one sitting."

The testator· had invited the two witnesses to his home for dinner. After dinner he asked them to witness his will. The testator read what he had written, and one of the witnesses suggested that he should make some provision for his eldest son. The testator then wrote the clause which he called "Codicil #1," in which his eldest son is bequeathed the sum of $50. In the presence of the two witnesses the testator then signed his name at the places where his signature appears on the paper. The witnesses then signed the paper twice on the first page and at the end of the writing on the third page, opposite the signature of the testator. The testator indicated the place at the bottom of the third page where the two subscribing witnesses were to sign, saying, "This is the finish of it," or "This is the end of the will," or words to that effect.

The questions involved are whether the first page is a valid will, whether the last clause on the third page is a codicil, whether the whole paper is a single will, and, if so, whether it was properly executed at the end thereof by the testator and the two subscribing witnesses. Because of the fact that material parts of the will on the third page are connected with the writing on the first page, it is well settled that the testamentary provisions above the signatures on the first page do not constitute a valid will.

The intrinsic evidence of the paper itself shows that the "end" of the paper propounded is on the third page. If the "end" is just above the paragraph which the testator called 'Codicil #1," where only the testator signed, the will is invalid because it was not signed at the end by the two witnesses. In that case there could be no codicil in the legal meaning of the term, because a codicil is an addition to a completed will. If what is termed a "codicil" is an addition to an incomplete will, and the whole instrument including the so-called "codicil" is afterwards validly executed as an entire will, the so-called "codicil" becomes merely a paragraph or clause or part of a will, and is not a "codicil" in the legal sense of the term.

That is the situation here. The so-called "codicil" was on the paper before the witnesses affixed their signatures to any part of the paper. The evidence shows clearly that the testator, a layman, did not use the word "codicil" in the legal sense, but referred to it as the "end of the will," or the "finish of it," evidently meaning that the so-called "codicil" was part of the entire transaction of making his will. As there was no will until the witnesses subscribed their names below the last paragraph on the third page, and as all the other requirements were unquestionably observed, I am of opinion that the signatures of the testator and of the two subscribing witnesses at the bottom of the third page

are at the natural end of the will, and that the entire writing was properly executed as a will.

All of the writing on the paper propounded will be admitted to probate as the last will and testament of the testator.

Probate decreed.